UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In re:  Case No. 22-10124-CN
 Chapter 11
4TH STREET MEDICAL BUILDING, LLC,
    Debtor.
_____/

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023**

**INTRODUCTION**

This is Debtor's Amended Combined Chapter 11 Plan of Reorganization and Disclosure Statement Dated March 1, 2023 (the Plan). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed. This Plan contains material differences from the earlier plan proposed by the Debtor in July 2022, addressing the issues for which the Court declined to confirm the earlier plan and changed circumstances regarding the Debtor's assets since last July.

Part 1 contains the treatment of the creditor with a secured claim. Part 2 contains the treatment of general unsecured creditors in Class 2(a) (100% of their allowed claims in one payment on the Effective Date, with no post-petition interest) and tenants in Class 2(b) tenant security deposit (unimpaired as tenant will retain its rights under nonbankruptcy law regarding the security deposit). Class 2(a) excludes all claims arising from membership interests in the Debtor. Taxes and other priority claims would be paid in full, as shown in Part 3. Part 4 provides for assumption of unexpired leases and executory contracts. Part 5 contains the treatment of Class 5, which consists of all holders of membership interests in the Debtor. The members of Class 5 will receive their pro rata portion of the residue in the estate, after payments in full to all creditors except for Class 6 creditors, distributed based upon the number of membership units held by the Class 5 members. Part 6 consists of (a) all holders of claims arising from the rescission of a purchase or sale of a membership interest in the Debtor, (b) all holders of claims for damages arising from the purchase or sale of a membership interest in the Debtor, and (c) all holders of claims for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of such a claim. The members of Class 6 will receive nothing under the Plan.

Classes 1, 2(a) and 5 are impaired and are entitled to vote on confirmation of the Plan. Class 6 is deemed to have rejected the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than April 12, 2023. The court will hold a hearing on confirmation of the Plan on April 19, 2023, at 11:00 a.m.

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023**
-1-

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. (Because this is a liquidating plan, there is no hypothetical Chapter 7 liquidation analysis attached as an exhibit.) Exhibit 2 describes how much Debtor is required to pay on the effective date of the plan.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will not be discharged from all pre-confirmation debts, because this is a liquidating plan. Enforcement of the Plan and creditors' remedies if Debtor defaults are described in detail in Parts 7 and 8 of the Plan.

## PART 1: TREATMENT OF SECURED CREDITORS

### Class 1: Creditors' Rights Remain Unchanged.

| Class | Name of Creditor | Description of Collateral |
| --- | --- | --- |
| 1 | Poppy Bank | 1623 4th Street and 1701 4th Street, Santa Rosa, CA (the "Property") |

Poppy Bank is impaired. The treatment of its Class 1 claim is as follows:

1. Immediately upon confirmation, Poppy Bank has relief from stay and will be entitled to pursue any and all rights and remedies against the Property, under all applicable non-bankruptcy law, including without limitation, foreclosure and unlawful detainer actions to evict any and all tenants occupying the Property.
2. The Debtor will continue to manage the Property, collecting rent, using the rent to pay only expenses for the Property, and remitting the net rents to Poppy Bank. Net rent revenue through February 16, 2023, in the amount of $29,290.96, plus all rent revenues received after such date, will be deposited into a segregated account. The Debtor may use funds from this account to pay expenses for the maintenance and operation of the Property, consistent with the existing stipulation for use of cash collateral, with net revenues to be remitted to Poppy Bank periodically.
3. If the Property is not sold to a third party before Poppy Bank completes

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY**
**APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023**
-2- (Version: 7/30/12)

Case: 22-10124    Doc# 100    Filed: 03/09/23    Entered: 03/09/23 15:17:18    Page 2 of 13

nonjudicial foreclosure, and Poppy Bank's Class 1 claim is not paid in full at foreclosure, then the Debtor will remit to Poppy Bank the funds in the segregated account until Poppy Bank is paid in full promptly after the completion of foreclosure.

    4.    The Debtor will continue to list the Property for sale pending the completion of the foreclosure. The Debtor will pay the Class 1 claim in full from the escrow for the sale of the Property. If the Debtor receives any purchase offers at a price that would not be sufficient to pay Poppy Bank in full, the broker will present the offers to Poppy Bank for its sole decision whether to accept the discounted payoff (i.e., "short sale") that would result from the closing of the offer.

The Creditor in this class shall retain its interest in the collateral until paid in full.

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**

**Class 2(a). General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Amount to be Paid |
|---|---:|---:|
| A1 Professional Wind | $244.00 | $244.00 |
| Abbey, Weitzenberg, et al. | $7,934.54 | $7,934.54 |
| Advanced Surgery Inst. | $23,978.50 | $23,978.50 |
| City of Santa Rosa | $674.00 | $674.00 |
| Fishman Supply Company | $820.82 | $820.82 |
| Jillian Helmer, CPA | $7,516.50 | $7,516.50 |
| KONE North Bay U384 | $375.26 | $375.26 |
| Maria Mendoza | $750.00 | $750.00 |
| Pacific Gas and Electric | $4,051.39 | $4,051.39 |
| Stanley Convergent Sec. Sys. | $50.00 | $50.00 |
| **TOTAL** | | **$46,395.01** |

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid in full on the Effective Date, without any post-petition interest.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 7(c)). **This class is impaired and is entitled to vote on confirmation of the Plan.** The Debtor presently does not dispute any of the

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY**
<u>**APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023**</u>
-3-     (Version: 7/30/12)

Case: 22-10124   Doc# 100   Filed: 03/09/23   Entered: 03/09/23 15:17:18   Page 3 of 13

claims listed above.

**Class 2(b). Current Tenant Security Deposits.**

| Name of Creditor | Amount of Claim | Amount to be Paid |
|---|---:|---:|
| Santa Rosa Head and Neck Surg. | $16,147.50 | $16, 147.50 |

The Class 2(b) claim is for a security deposit provided by the Debtor's current tenants.

The creditor's legal, equitable, and contractual rights remain unchanged. The security deposit will be returned to the creditor at the end of the terms of the creditor's lease in the event that and to the extent that under applicable non-bankruptcy law the Debtor is obligated to do so.

The creditor in Class 2(b) is not impaired and is not entitled to vote on confirmation of the Plan.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**

(a) <u>Professional Fees</u>.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Bluestone Faircloth & Olson, LLP | $55,000 |
|  |  |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 7(c)). Estate professionals are not entitled to vote on confirmation of the Plan.

(b) <u>Other Administrative Claims</u>.  Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below).  All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY**
<u>**APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023**</u>
-4- (Version: 7/30/12)

Case: 22-10124   Doc# 100   Filed: 03/09/23   Entered: 03/09/23 15:17:18   Page 4 of 13

Debtor is not in material default under the Plan (defined in Part 7(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| n/a | |
| | |

(c) <u>Tax Claims</u>. Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full on the Effective Date. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 7(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| n/a | | | | |
| | | | | |

**PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) <u>Executory Contracts/Unexpired Leases Assumed</u>. Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due. Pre-confirmation arrears will be paid in full on the Effective Date.

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| Attenda Med. Group, Inc. | Suite 100 lease | none | n/a | n/a |

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY
<u>APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023</u>**

-5-  (Version: 7/30/12)

| S.R. Head and Neck Surg. | Suite 120 lease | none | n/a | n/a |

(b) <u>Executory Contracts/Unexpired Leases Rejected</u>.  Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court.  Claims arising from rejection of executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| n/a | |
| | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed assumed.

**PART 5: TREATMENT OF MEMBERSHIP INTERESTS**

**Class 5.  Membership Interests.**

| Class 5 Member | Number of Membership Units |
|---|---|
| Abdul Harris, M.D. | 1 |
| Allen Hill, M.D. | 1 |
| Catherine Davis, M.D. | 1 |
| Dale Morrison, M.D. | 3 |
| Denise Brown | 1 |
| Erny & McCarthy 2007 Rev. F.T. | 2 |
| Gary and Pam Maes Family Trust | 2 |
| Hunter Brooke Clyde Trust | 2 |
| Jill and Stefan Zechowy Trust | 5 |
| Keith Korver, M.D. | 2 |
| L Faust and J Skvaril | 2 |

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023**

| | |
|---|---:|
| Lulu Huang | 2 |
| Mark Homicz and Pamela A. Loman Rev. | 5 |
| Mellerstig Trust | 3 |
| Michael Tran, M.D. | 1 |
| Othello Holdings LLC | 2 |
| Patrick Coleman, Te. of Coleman Fam. T. | 1 |
| Punatar Living Trust | 1 |
| Robert O. and Barbara L. Woodbury T. | 1 |
| Ruth Skidmore 2006 Trust | 2 |
| Scott Lee, M.D. and Donna Chen | 8 |
| Stewart Family Trust | 2 |
| The Hopkins 2005 Family Trust | 1 |
| Thomas and Ingrid Dunlap | 1 |
| Thomas Bertoli, MD | 1 |
| **TOTAL** | **53** |

Class 5 consists of all holders of membership interests in the Debtor.

The members of Class 5 will receive their pro rata portion of the residue of the Debtor's assets, after payments in full to all other creditors except for Class 6, distributed based upon the number of membership units held by the Class 5 members, as set forth hereinabove.

The distribution will be made within 30 business days after the Debtor closes the sale of the Property or the Property is lost to foreclosure.

Class 5 is impaired under the Plan.

**PART 6: TREATMENT OF CLAIMS RELATING TO MEMBERSHIP INTERESTS**

**Class 6. Claims Relating to Membership Interests.**

Class 6 consists of (a) all holders of claims arising from the rescission of a purchase or sale of a membership interest in the Debtor, (b) all holders of claims for damages arising from the

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023**
-7- (Version: 7/30/12)

Case: 22-10124   Doc# 100   Filed: 03/09/23   Entered: 03/09/23 15:17:18   Page 7 of 13

purchase or sale of a membership interest in the Debtor, and (c) all holders of claims for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of such a claim.

The holders of Class 6 claims will receiving nothing under the Plan and are deemed to have rejected the Plan. The treatment of Class 6 is pursuant to Section 510(b) of the Bankruptcy Code, which subordinates "a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under Section 502" to all other claims, "except that if such security is common stock, such claim has the same priority as common stock."

## PART 7: NO DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

(a) No Discharge. Debtor shall not receive a discharge of debts because this is a liquidating plan.

(b) Vesting of Property. On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 8(f) below.

(c) Plan Creates New Obligations. Except as provided in Part 8(d) and (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

## PART 8: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN

(a) Creditor and Member Action Restrained. The confirmed Plan is binding on every creditor and member whose claims or interests are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor or member may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 8(e) below.

(b) Obligations to Each Class Separate. Debtor's obligations under the Plan are separate with respect to each class of creditors and members. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 8, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY
APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023**
-8- (Version: 7/30/12)

Case: 22-10124    Doc# 100    Filed: 03/09/23    Entered: 03/09/23 15:17:18    Page 8 of 13

non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c) <u>Material Default Defined</u>. If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>. Upon confirmation of the Plan, and subject to Part 7(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 8(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

**PART 9: GENERAL PROVISIONS**

(a) <u>Effective Date of Plan</u>. The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY**
<u>**APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023**</u>
-9- (Version: 7/30/12)

Case: 22-10124   Doc# 100   Filed: 03/09/23   Entered: 03/09/23 15:17:18   Page 9 of 13

been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>. Debtor will create a reserve for disputed claims. Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be returned to Debtor.

(c) <u>Cramdown</u>. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| n/a | | | | |
| | | | | |

(g) <u>Notices</u>. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY**
<u>**APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023**</u>
-10- (Version: 7/30/12)

Case: 22-10124    Doc# 100    Filed: 03/09/23    Entered: 03/09/23 15:17:18    Page 10 of 13

(i) <u>Deadline for § 1111(b) Election</u>.  Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

(j) <u>Unclaimed Distribution Checks</u>. Any distribution checks to creditors in Class 2(a) or (b) that remain unclaimed or unnegotiated for ninety (90) days or are returned for reasons other than the absence of a current or correct mailing address (unless a current or correct mailing address cannot be determined after reasonable inquiry) shall become property of the Debtor and shall be distributed first to creditors in Class 2(a) or (b), to the extent such creditors have not already be paid in full, and then to members in Class 5. Any distribution checks to members in Class 5 that remain unclaimed or unnegotiated for ninety (90) days or are returned for reasons other than the absence of a current or correct mailing address (unless a current or correct mailing address cannot be determined after reasonable inquiry) shall become property of the Debtor and shall be distributed pro rata to the other members in Class 5.

Dated: March 6, 2023

4th Street Medical Building, LLC
By: /S/ *Keith Korver*
     Keith Korver
Its Chair of Managers

Bluestone Faircloth & Olson, LLP
By: *Steven M. Olson*
Attorney for Debtor

**AMENDED COMBINED PLAN OF REORGANIZATION AND TENTATIVELY**
<u>**APPROVED DISCLOSURE STATEMENT DATED MARCH 6, 2023**</u>

(Version: 7/30/12)

**Exhibit 1 - Events That Led To Bankruptcy**

The Debtor is a California Limited Liability Company. It was formed on October 12, 2007. It has 25 members, holding 53 membership units. It is managed by a committee of its members, with Keith Korver as the current chair of the managers.

The Debtor has owned and managed medical office buildings. Its financial condition was negatively impacted when tenant St. Joseph's elected not to renew its lease of the ambulatory surgery institute at 1739 4th Street in 2020 and when a substantial tenant, Northern California Medical Associates, went out of business in early 2021.

In late 2021, the Debtor sold one of its buildings, 1739 4th Street in Santa Rosa, for approximately $2,625,000. It presently owns and manages the medical office building located at 1701 4th Street, Santa Rosa, CA, plus the parking lot at 1623 4th Street, across Proctor Drive from its building.

Until recently, the rent revenue from 1701 4th Street has been sufficient to service the Debtor's debts. In February, the Debtor became delinquent on its mortgage to Poppy Bank secured by its real properties.

The Debtor was engaged, pre-petition, in an arbitration proceeding against two of its members, Scott Lee, M.D., and Donna Chen. The members sought to compel the Debtor to repurchase their membership interests in the Debtor. Weeks before the petition date, the Debtor received the arbitrator's tentative ruling. The ruling was adverse to the Debtor. The Debtor filed the petition because it would not have been able to satisfy the judgment in favor of Dr. Lee and Ms. Chen.

**Exhibit 2 - Effective Date Feasibility**

Can the Debtor Make the Effective Day Payments?

|  | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date |  | 125,000.00 |
|   Payments on Effective Date |  |  |
|     Unclassified Claims | 0 |  |
|     Administrative Expense Claims | 55,000.00 |  |
|     Priority Claims | 0 |  |
|     Claims (Class 2(a)) | 46,395.01 |  |
|     U.S. Trustee Fees | 0 |  |
| B. Total Payments on Effective Date |  | $101,395.01 |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) |  | $23,604.99 |